UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LATOSHA LEE,<br><br>    Plaintiff,<br>vs.<br><br>BLACK ENTERTAINMENT TELEVISION, LLC, a foreign limited liability company; FLAVOR UNIT ENTERTAINMENT, INC., a foreign corporation; NICCI GILBERT, individually,<br><br>    Defendants. | Case No.: 1:19-cv-02751-LAK<br><br>FIRST AMENDED COMPLAINT<br><br>DEMAND FOR JURY TRIAL AND INJUNCTIVE RELIEF |

Plaintiff, LATOSHA LEE ("Lee"), sues Defendants, BLACK ENTERTAINMENT TELEVISION, LLC ("BET"), FLAVOR UNIT ENTERTAINMENT, INC. ("Flavor"), and NICCI GILBERT ("Gilbert"), and alleges as follows:

## NATURE OF THE ACTION

1. This is an action for copyright infringement, pursuant to the Copyright Act of 1976, as amended (the "Copyright Act"), 17 U.S.C. §§ 101 *et seq*., stemming from Defendants' intentional and actionable copying of numerous significant compositional elements of a dramatic work that Lee owns and created entitled, ***"Real Life Cinderellas of Atlanta"*** (interchangeably referred to herein as the "Copyrighted Work") that is infringed by the television show ***"From the Bottom Up,"*** which was distributed by BET and produced by Flavor and Gilbert. In the alternative to copyright infringement, this is also an action for idea misappropriation.

2. Lee seeks all remedies afforded by federal law including injunctive relief and money damages in the form of actual damages, statutory damages, and/or disgorgement, as well as a recovery of attorneys' fees and full costs, arising from Defendants' willful conduct alleged herein.

3. As an independent claim from copyright infringement or idea misappropriation, this is also an action of breach of an implied contract.

## PARTIES

4. Lee is *sui juris* and is a citizen of the State of Georgia. Lee is the creator of ***"Real Life Cinderellas of Atlanta,"*** which was created in 2013. Lee is the sole owner of United States Copyright Registration No. PAu003682804 that protects a first treatment to the Copyrighted Work. Lee is also the sole owner of a United States Copyright Registration that protects the sizzle reel of *"Real Life Cinderellas of Atlanta"* as a motion picture/audiovisual work. Accordingly, Lee—and Lee only—enjoys all exclusionary rights granted by Section 106 of the Copyright Act for ***"Real Life Cinderellas of Atlanta"*** and the right to create derivative works therefrom.

5. BET is a foreign limited liability company organized under the laws of the District of Columbia and with its headquarters located in New York, New York. BET, at all times material, distributed copies of the show ***"From the Bottom Up"*** to the public. Upon information and belief, BET licensed the distribution rights of ***"From the Bottom Up"*** from Flavor.

6. Flavor is a foreign corporation organized under the laws of the State of Florida and with its principal place of business located in Florida. Flavor is the production company that created ***"From the Bottom Up"*** which infringes the Copyrighted Work, through Gilbert. Dana Elaine Owens, p/k/a Queen Latifah founded Flavor in or about 1995. Flavor, at all times material, both had access to the Copyrighted Work prior to creation of ***"From the Bottom Up"*** and then actually copied protectible elements of ***"Real Life Cinderellas of Atlanta."***

7. Gilbert is *sui juris* and, upon information and belief, is a citizen of the State of Georgia. Gilbert is the credited producer for the television show ***"From the Bottom Up,"*** which infringes the Copyrighted Work. Gilbert, at all times material, both had access to the Copyrighted Work prior to creation of ***"From the Bottom Up"*** and then actually copied protectible elements of ***"Real Life Cinderellas of Atlanta."***

## **SUBJECT MATTER JURISDICTION**

8. This court has original jurisdiction over the subject matter in this action, pursuant to 28 U.S.C. §§ 1331, 1338, because this action arises in part under the Copyright Act.

9. This court has supplemental jurisdiction over the state law claims in this action, pursuant to 28 U.S.C. § 1367, because the state law claims are so related to the copyright infringement claim that they form part of the same case or controversy under Article III of the United States Constitution.

## **PERSONAL JURISDICTION**

10. This court has *in personam* jurisdiction over BET because it is found in the State of New York. This court also has *in personam* jurisdiction over BET because it has already appeared in this action, previously filed a dispositive motion, and did not challenge personal jurisdiction in that motion.

11. This court has *in personam* jurisdiction over Flavor because Flavor has minimum contacts with the State of New York concerning the subject matter herein such that the exercise of jurisdiction over Flavor does not offend notions of fair play and substantial justice. This court also has *in personam* jurisdiction over Flavor because it has already appeared in this action, previously filed a dispositive motion, and did not challenge personal jurisdiction in that motion.

12. This court has *in personam* jurisdiction over Gilbert because Gilbert has minimum contacts with the State of New York concerning the subject matter herein such that the exercise of jurisdiction over Gilbert does not offend notions of fair play and substantial justice. This court also has *in personam* jurisdiction over Gilbert because she has already appeared in this action, previously filed a dispositive motion, and did not challenge personal jurisdiction in that motion.

## **VENUE**

13. Venue is proper in this court, pursuant to 28 U.S.C. §§ 1391(b)(2) and 1391(b)(3), because a substantial part of the events or omissions giving rise to this action occurred in this federal district and at least one Defendant in this action is subject to this court's *in personam*

jurisdiction in this federal district. Venue is also proper in this court all Defendants have already appeared in this action, previously filed a dispositive motion, and none of the Defendants challenged venue in that motion.

14.     Alternatively, venue is proper in this court, pursuant to 28 U.S.C. § 1400, because this action relates to a copyright and therefore this action may be instituted in any federal district in which any Defendant resides or is found.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### *Lee's Copyrighted Work: Real Life Cinderellas of Atlanta*

15.     On or about September 11, 2013, Lee conceived a novel idea for a reality television show called **"Real Life Cinderellas of Atlanta."** Although television networks had begun to air a myriad of reality television shows at the time that Lee created her show idea and fixed same in a tangible medium of expression, no network at that time had any programming that highlighted the daily lives of women with publicized scandals seeking redemption.

16.     **"Real Life Cinderellas of Atlanta"** selects, coordinates, and arranges creative concepts into an original expression of ideas, consisting of the following:

- **Theme and Mood:** The overall premise of the show featured five African-American quasi-celebrity women living in Atlanta, Georgia who have all experienced media scandals and working toward turning their lives around. The series would introduce the cast, show how the media portrays each individual, and then later how they are professionals, mothers to their children, and have changed their images.

- **Characters:** The proposed cast of **"Real Life Cinderellas of Atlanta"** detailed very specific types of women who have all been involved with public scandals, such as:

    (a) The mistress of a professional athlete, labeled as a "home wrecker," who in reality is an ambitious and self-determined businesswoman;

(b) A "washed up" member of a girl group who is once-famous R&B singer with a history of working with Sean "P. Diddy" Combs on a reality show and who is seeking to make a comeback;

(c) A "washed up" singer/actress seeking to make a comeback;

(d) The daughter of a professional athlete who has appeared in other reality shows and who has an alleged reputation of being "out of control" and "promiscuous";

(e) A "washed up" rapper who is making a comeback;

(f) A "groupie" who is an alleged "golddigger" but who is an aspiring TV/Radio personality;

(g) A singer who is a repeated domestic violence victim with a history of abusive relationships who ultimately fights back against her attacker-husband;

(h) A reality-star, drug addict struggling with sobriety issues and becoming a good mother after serving time in jail;

(i) An ex-pornography star seeking to turn her life around.

17. On June 18, 2013, Lee registered *"Real Life Cinderellas of Atlanta,"* which included character biographies, concepts, themes, and plot/story line, with the United States Copyright Office. Lee's copyright registration bears serial number PAu003682804.

18. Lee also created and registered the sizzle reel of *"Real Life Cinderellas of Atlanta,"* with the U.S. Copyright Office, which is a derivative work of the original Copyrighted Work, *"Real Life Cinderellas of Atlanta."*

19. In the sizzle reel, the characters who are introduced one-by-one, including, Latosha Lee, Sharika Nicole Giddens, Kia "Baby Doll" Jeffries, Karrie Ramel, Dominique Scott, Judith So Hood Schullark, are all women that reside in Atlanta, Georgia, that jointly participate in various activities such as a pole dancing class, discuss the struggles associated with their "comebacks" after falling from grace, show snippets of their every day life, discussions to

promote "sisterhood" and positivity, how the media portrays each of them in a negative light and the challenges associated with that, how they intend to change their lifestyle, and the sizzle reel uses the tag line, "You think you know, but you don't, just watch and see."

20. Most notably, in the sizzle reel, Lee also identified Dominque Scott as a collaborator on *"Real Life Cinderellas of Atlanta"* who would be involved in production.

21. After creating the sizzle reel, Lee created an additional derivative work of the Copyrighted Work: a second treatment, and shrunk treatment, which is also solely owned by Lee, on or about September 11, 2013. A true and authentic copy of the second treatment, and shrunk treatment, is attached hereto as **Composite Exhibit "A."**

22. In the second treatment, Lee specifically identified Maia Campbell as a proposed cast member of the show.

23. Lee began pitching the Copyrighted Work to producers and production companies to partner up with her to help place *"Real Life Cinderellas of Atlanta"* on television networks, specifically targeting WETV, Bravo, Oxygen, and OWN.

24. On June 17, 2013, Lee sent materials for *"Real Life Cinderellas of Atlanta"* including to Maia Campbell's manager, Corey Love of The Corey Group, LLC via email address at: aclovemgmt@************. The purpose of sending the email/materials to Love was to set up a meeting to pitch Lee's idea for *"Real Life Cinderellas of Atlanta"* to Campbell to persuade her to be a cast member on the show.

25. A month later, on or about July 17, 2013, Love emailed Lee and asked to set up a conference call between himself, Lee, and Campbell to discuss Lee's project, materials she sent, and show idea for the *"Real Life Cinderellas of Atlanta."* Campbell and Love met with Lee and suggested that she pitch her project idea directly to Nicci Gilbert.

26. On September 12, 2013, and again on September 27, 2013, Lee sent her most recent treatment for *"Real Life Cinderellas of Atlanta"* and a synopsis of the show idea to Gilbert via email to the address: niccigilbert@************; and, as a follow up, on June 2,

2014, Lee sent another email to Gilbert with a copy of the sizzle reel for *"Real Life Cinderellas of Atlanta"* to see if Gilbert was interested in being a producer on the show.

27. On or around June 11, 2014, Lee submitted materials for *"Real Life Cinderellas of Atlanta"* to Ronnie Jackson, Dan Garcia, and Gilbert. Lee had Gilbert's personal email address and emailed Gilbert regularly, updating her with proposed cast and concept changes.

28. Thereafter, Ronnie Jackson and two BET producers called Lee to express an immediate need of a new show. Lee pitched her Copyrighted Work for the *"Real Life Cinderellas of Atlanta"* show and following that call Lee directed her videographer to send the BET producers the most current treatment of *"Real Life Cinderellas of Atlanta."*

29. Lee's understanding from the two BET producers was that the BET Network had recently dropped a show and was seeking a replacement.

30. All information delivered by Lee to the BET producers was done so that BET could use Lee's Copyrighted Work subject to Lee's express permission. Indeed, in one email from Lee to Gilbert, on June 11, 2014, Lee wrote, she was, "in search of a production company to pick up this project and take it to the heights it is destined."

31. At all times relevant, Love and the BET producers, knew that (a) writer-creators pitch creative ideas to prospective purchasers/cast members with the object of selling ideas for compensation; and (b) that it was standard in the entertainment industry for ideas to be pitched with the expectation of compensation in the event of use.

32. On January 13, 2015, Lee confirmed via email with Jay Kovitz, one of BET's Producers to email address: jay.kovitz@************ that she had not pitched *"Real Life Cinderellas of Atlanta"* to BET, giving BET Producers the green light to pitch Lee's Copyrighted Work directly to the network.

33. The next day, on January 14, 2015, Bill Nelson, co-producer of *"Real Life Cinderellas of Atlanta"* sent an email to Kovitz to indicate that he was re-editing the sizzle reel and would have it finished that day for Kovitz's review.

34.     In response, Kovitz replied by email to Bill Nelson stating: "[t]hanks so much. Look forward to seeing the tape when ready.  Have a great day."

35.     After Bill Nelson sent the requested materials to BET, the BET Producers ignored and ceased communications with Lee.

### *Defendants' Infringing Series: "From The Bottom Up"*

36.     After BET duped Lee into believing that it had no intention of using Lee's *"Real Life Cinderellas of Atlanta,"* on or about October 2016, Lee's publicist informed her that she hd seen Lee's show idea for *"Real Life Cinderellas of Atlanta"* on BET's network, but it was now re-titled as *"From the Bottom Up."*

37.     Unaware that Lee's Copyrighted Work was being produced, Lee watched *"From the Bottom Up"* and discovered that the total concept and overall feel of the BET Show, *"From the Bottom Up"* (interchangeably referred to herein as the "Infringing Series"), was substantially the same as *"Real Life Cinderellas of Atlanta."*

38.     The Defendants were all involved the development, production and distribution of the Infringing Series:

- BET producers participated in the various aspects of development and production of the Infringing Series;
- Flavor participated in the various aspects of development and production of the Infringing Series;
- Gilbert, as the creator and executive producer of *"From the Bottom Up,"* provided all the necessary resources for the development, production, and distribution for the Infringing Series.
- Campbell participated in the development and production as a cast member of the Infringing Series.
- The Defendants both had access to Lee's Copyrighted Work and actually received copies of the Copyrighted Work and derivative works therefrom prior to creating *"From the Bottom Up."*

39. Each and every Defendant violated Lee's Copyrighted Work, as they all participated in the development, production, and/or distribution in the Infringing Series.

40. Each and every Defendant identified above also made profits from the use and exploitation from Lee's Copyrighted Work, which Lee never granted Defendants' any rights or license for the use of the Copyrighted Work.

### *Preliminary Comparison of the Copyrighted Work and the Infringing Series*

41. The total concept and overall feel of the Infringing Series ***"From the Bottom Up"*** was nearly identical to Lee's Copyrighted Work. In addition, ***"From the Bottom Up"*** copies the original way in which Lee selected, coordinated, and arranged the same protectible elements apparent in ***"Real Life Cinderellas of Atlanta"*** into the same expression of ideas.

42. No reality show prior to ***"Real Life Cinderellas of Atlanta"*** had focused on the daily lives of women that experienced negative media publicity who wanted to turn their lives around. BET publicized and continues to publicize the Infringing Series and Lee's Copyrighted Work as a "docu-series following women who have experienced complex adversity. Everyone has a cross to bear. The pressures of these women's crosses have led them to make bad choices and they are now dealing with the consequences of their actions and their journey is the compelling part. Their honesty and courage are what makes their stories intriguing." *See* https://www.bet.com/shows/bet-her/from-the-bottom-up/cast-info.html. The theme and overall mood for the two shows are substantially similar.

43. The plots of the Infringing Series and Lee's Copyrighted Work are nearly identical. Both consist of the same sequence of events: 1) bad publicity in the media; 2) different or changed circumstances; 3) starting over and trying to obtain success in personal and professional life.

44. The setting for both the Infringing Series and Lee's Copyrighted Work are set in the metropolitan Atlanta, Georgia area. Lee made a strategic decision to choose Atlanta, Georgia as the setting for ***"Real Life Cinderellas of Atlanta"*** because the city is uniquely situated with a rich history of successful African-American women.

45. ***"From the Bottom Up"*** also uses the same artistic choices in cast members. The characters of both shows, are five African-American women of a specific type (singers, actresses, business owners, and the former paramour of a high profile professional athlete) who seemed to have "had it all," but their personal and professional lives were ruined due to public scandal: each either served time in prison, cheated on their husbands, or were arrested for DUI, substance abuse, and/or domestic violence. Each is now attempting to obtain redemption. The cast members included:

- Sara Stokes: former singer in the first season of "Making the Band 2," affiliated with "P. Diddy," trying to rebuild her life after being in jail for history of domestic disputes with her husband;
- Stacii Jae Johnson: arrested for DUI, actress, women's empowerment speaker and Radio/TV personality;
- Kim Smedley: a cosmetologist who was sent to federal prison for 18 months;
- Chrystale Wilson: "washed up" actress seeking a comeback;
- Christine Beatty: former chief of staff for the city of Detroit, resigned due to a political sex scandal and criminal charges of perjury;
- Chanita Foster: married professional football player George Foster and was previously a cast member on Football Wives;
- Maia Campbell: actress and model struggling with drug addiction, and who spent time in jail for theft and disorderly conduct.

46. ***"From the Bottom Up,"*** in one episode, also specifically focuses on the social aspect the cast members have in a pole dancing class, much like in ***"Real Life Cinderellas of Atlanta"*** depicts in the registered sizzle reel of the show.

47. Season 2 of ***"From the Bottom Up"*** also specifically cast Maia Campbell as the main member of the show, in the identical fashion as suggested by ***"Real Life Cinderellas of Atlanta"*** in the second treatment, and shrunk treatment, attached hereo.

48.     At some point, BET was also considering adding Dominique Scott to the cast of the *"From the Bottom Up"* and who was also in Lee's sizzle reel to work as a mentor and advise the cast on how to move forward with their past mistakes.

49.     In comparing the two, the Infringing Series and Lee's Copyrighted Work are substantially similar, which can be of no coincidence based on the Defendants' access to Lee's materials, treatment, sizzle reel and show idea for *"Real Life Cinderellas of Atlanta."*

### BET's "From the Bottom Up's" Commercial Success

50.     *"From the Bottom Up"* became an instant success.

51.     From 2016 to the present, Defendants have made several seasons of "*From the Bottom Up,"* and recently finished producing a season which has changed the overall premise from the initial seasons of the BET show.  All of the shows were all reproductions and/or unauthorized derivative works of Lee's Copyrighted Work and constitute willful infringement of Lee's Copyrighted Work.

52.     All episodes in Seasons 1 and 2 of *"From the Bottom Up"* infringe Lee's Copyrighted Work, and each episode serves as separate acts of infringement on Lee's Copyrighted Work.

53.     Defendants continue to infringe on Lee's Copyrighted Work through the distribution of the Infringing Series through online streaming on BET.com, and various other distribution outlines, including but not limited to www.youtube.com, www.tvguide.com.

54.     Lee has not received compensation for creating the Copyrighted Work, nor the idea/expression of the idea on which *"From the Bottom Up"* was based.  Lee has suffered damages as a direct and proximate result of Defendants' conduct.

55.     All statutory and general conditions precedent to this action have ether occurred or have been waived by operation of law.

56.     Lee retained the law firm of Watson LLP to represent his interests in this action and is obligated to pay such firm reasonable attorneys' fees for its services. Lee is entitled to a recovery of her attorneys' fees and full costs pursuant to Section 505 of the Copyright Act.

**COUNT ONE**
**Direct, Contributory, and Vicarious Copyright Infringement,**
**(17 U.S.C. § 501),**
**Alternatively,**
**Misappropriation of Ideas,**
**(All Defendants)**

57. Lee re-alleges paragraphs 1 through 56, as if fully set forth herein.

58. Lee is the sole owner of United States Copyright Registration No. PAu003682804, which protects the copyright and all derivatives stemming from Lee's first treatment for *"Real Life Cinderellas of Atlanta."*

59. Lee is also the sole owner of a second Copyright Registration, which protects the sizzle reel for *"Real Life Cinderellas of Atlanta"* as a motion picture/audiovisual work.

60. BET had the right and ability to supervise the infringing conduct and a direct financial interest in the infringing activity. BET also had the legal right to stop or limit the infringing conduct and the practical ability to do so.

61. In order to write, film and record *"From the Bottom Of Up,"* and ultimately to produce, perform, distribute and otherwise exploit Lee's Copyrighted Work, the Defendants boldly copied the protected elements of *"Real Life Cinderellas of Atlanta,"* to which they had prior access, resulting in a television show series that is substantially similar to *"Real Life Cinderellas of Atlanta"* that features the same sequence of events, overall feel, and concept.

62. The copying of *"Real Life Cinderellas of Atlanta"* by the Defendants was greater than *de minimis*.

63. *"Real Life Cinderellas of Atlanta"* and *"From the Bottom Up"* contain essential compositional elements so similar as to evidence the conscious copying of one in pursuit of the creation of the other. Resulting from this unlawful copying are two works so similar that the ordinary observer can only conclude that *"From the Bottom Up"* would not exist but for the copying of *"Real Life Cinderellas of Atlanta."*

64. The Defendants' unauthorized reproduction, distribution, performance, display, and creation of a derivative work of *"Real Life Cinderellas of Atlanta"* infringes Lee's exclusive rights in direct violation of the Copyright Act.

65. The Defendants did not seek or receive any permission or authorization, express or otherwise, to interpolate any portion of *"Real Life Cinderellas of Atlanta"* into *"From the Bottom Up."*

66. The Defendants' conduct has been at all times relevant herein knowing, willful and with complete disregard for the rights of Lee, and also without regard for the damage sure to result from the infringement alleged herein.

67. The Defendants' unlawfully exploited *"Real Life Cinderellas of Atlanta"* without the knowledge or consent of Lee, resulting in the generation of massive profits, fame and credit in favor of Defendants.

68. Defendants' conduct was undertaken purposefully, willfully, knowingly and maliciously to the exclusion of, and without regard to the inevitable damage certain to result to Lee as the rightful owner of the *"Real Life Cinderellas of Atlanta"* and protectable elements of same.

69. As a direct and proximate cause of the conduct alleged herein, Lee has suffered irreparable damage.

70. From the discovery of the date of *"From the Bottom Up,"* all of the Defendants have infringed Lee's copyright interests in *"Real Life Cinderellas of Atlanta"* including: (a) substantially copying, or authorizing the copying of *"Real Life Cinderellas of Atlanta"* including on personal appearances, video, television, streaming through various media channels, and otherwise; (b) authorizing the reproduction, distribution of *"From the Bottom Up"* through the execution of licenses and/or actually selling, manufacturing, and/or distributing *"From the Bottom Up"* through various sources; (c) substantially copying *"Real Life Cinderella of Atlanta"* in the marketing, and promotion of *"From the Bottom Up"*; and, (d) participating in and furthering the aforementioned infringing acts, and/or sharing in the proceeds therefrom, all through substantial use of *"Real Life Cinderella of Atlanta"* in and as part of versions, and performed in a variety of manners including personal appearances, on and/or on television.

71. Lee has received no writer's credit for the Copyrighted Work, and Lee has received no copyright ownership interests in and/or for any of the exploitations of, ***"Real Life Cinderellas of Atlanta."***

72. The infringement alleged herein by the Defendants has been, and continues to be, willful and knowing and in disregard of Lee's rights.

73. With knowledge of the infringement, despite having been placed on notice by Lee, the Defendants have induced, caused or materially contributed to the infringing conduct of others, necessitating a finding of contributory liability.

74. The Defendants had the right and ability to control other infringers and have derived an extreme financial benefit from the continued infringement alleged herein, including that infringement they failed to control, such that the Defendants must be found vicariously liable to Lee.

75. As a direct and proximate result of the infringement and conduct of the Defendants as alleged herein, Lee has suffered actual injury and damage including lost profits, the lost opportunity to reinvest those profits, and the loss of industry goodwill, all in amounts to be proven at the time of trial.

76. Pursuant to Section 504 of the Copyright Act, Lee is entitled to damages including without limitation the loss of profits suffered, and disgorgement of the Defendants' profits and ill-gotten gains, all in amounts to be proven at the time of trial.

77. Consequently, Lee is entitled, pursuant to Section 505 of the Copyright Act, to maximum statutory damages in the amount of $150,000.00 per instance of infringement.

78. The Defendants' conduct has caused and will continue to cause Lee substantial damage unless enjoined by this court, and will continue, if allowed to go unchecked, to cause Lee irreparable damage not capable of ready determination, and as such Lee has no adequate remedy at law.

79. Pursuant to Section 502 of the Copyright Act, Lee is therefore entitled to a permanent injunction prohibiting the reproduction, distribution, or other derivative use of ***"Real***

*Life Cinderellas of Atlanta,"* in any and all formats, configurations, and/or media, including without limitation all works using *"From The Bottom Up."*

80. Alternatively, Lee's treatment consisted of a novel and concrete concept for a reality television show, *"Real Life Cinderellas of Atlanta"* to be filmed in Atlanta combined with a cast of five African American women—including Maia Campbell—who experienced negative media publicity and various hardships and are working on turning their lives in a more positive direction.

81. Lee shared her concept for the reality television show, *"Real Life Cinderellas of Atlanta,"* with Defendants in confidential business discussions with the object of selling her ideas for compensation as it was standard in the entertainment industry for ideas to be pitched with the expectation of compensation in the event of use.

82. Defendants improperly misappropriated Lee's idea for her reality television show, *"Real Life Cinderellas"* for their own use to create and launch the show, *"From the Bottom Up."*

83. Lee was damaged by Defendants' conduct.

84. Lee is entitled to an award of compensatory and punitive damages for Defendants' tortious conduct.

**COUNT TWO**
**Breach of Implied-In-Fact Contract Under State Law**
**(BET and Flavor)**

85. Lee re-alleges paragraphs 1 through 56, as if fully set forth herein.

86. On or around June 11, 2014, Lee submitted her treatment and sizzle reel for *"Real Life Cinderellas of Atlanta"* to Ronnie Jackson, Dan Garcia, and Gilbert. Ms. Lee's understanding from the two BET producers was that the BET networks had recently dropped a show and was seeking a replacement.

87. All information delivered by Lee was done so based on the understanding that her would be provided with selling her idea for compensation to BET.

88. Lee pitched her Copyrighted Work for the ***"Real Life Cinderellas of Atlanta"*** show and following that call Lee directed her videographer to send the BET producers the most current treatment of ***"Real Life Cinderellas of Atlanta,"*** for purposes of selling her idea for compensation to BET on January 14, 2015.

89. Lee had Gilbert's personal email address and emailed Gilbert regularly, updating her with proposed cast and concept changes. Thereafter, Ronnie Jackson and two BET producers called Lee to express an immediate need of a new show.

90. BET intentionally breached the agreement by failing to deliver compensation for Lee's reality television concept, ***"Real Life Cinderellas of Atlanta"*** after receiving Lee's treatment and sizzle reel.

91. By reason of BET's breach and Lee's full performance of providing the requested materials top pitch her reality television show, ***"Real Life Cinderellas of Atlanta,"*** Lee has suffered damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, LATOSHA LEE, demands judgment against Defendants, BLACK ENTERTAINMENT TELEVISION, LLC, FLAVOR UNIT ENTERTAINMENT, INC., and NICCI GILBERT, and seeks the entry of an order as follows:

1) On the First Cause action, relief to Plaintiff, of the following:

   a. Finding that Defendants have violated the Copyright Act;

   b. Granting an injunction to temporarily, preliminarily, and permanently enjoining Defendants, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the court's order by personal service or otherwise, from: (i) distributing, advertising, promoting, displaying, performing, or selling or authorizing any third party to manufacture, distribute, market, advertise, promote, display, perform, or sell the

      Infringing Series and any products, works, or other materials that include, copy, are derived from, or otherwise embody the Copyrighted Work; (ii) reproducing, distributing, performing, or publicly displaying the Copyrighted Work, or engaging in any activity that infringes Lee's rights in the Copyrighted Work; and (iii) aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (i) or (ii);

  c.  Requiring Defendants to provide an accounting attributable to Defendants' infringing conduct, including Defendants' profits from sales of the Infringing Series and any products, works, or other materials that include, copy, are derived from, or otherwise embody the Copyrighted Work;

  d.  Requiring Defendants to destroy or deliver up for destruction all materials in Defendants' possession, custody, or control used by Defendants in connection with Defendants' infringing conduct, including without limitation all remaining copies/inventory of the Infringing Series and any products and works that embody any reproduction or other copy or colorable imitation of the Copyrighted Work, as well as all means for manufacturing them;

  e.  Requiring Defendants, at their own expense, to recall the Infringing Series from any distributors, retailers, vendors, or others that have distributed the Infringing Series on Defendants' behalf, and any products, works or other materials that include, copy, are derived from, or otherwise embody the Infringing Series or the Copyrighted Work, and that Defendants be ordered to destroy or deliver up to Plaintiff for destruction all materials returned to them;

  f.  Awarding Plaintiff: (i) Defendants' profits obtained as a result of the infringing conduct proven at trial, including but not limited to all profits

        from sales and other exploitation of the Infringing Series and any products, works, or other materials that include, copy, are derived from, or otherwise embody the Infringing Series or the Copyrighted Work, or in the court's discretion, such amount as the court finds to be just and proper; (ii) damages sustained by Plaintiff as a result of Defendants' infringing conduct, in an amount to be proven at trial; (iii) should Plaintiff so elect, statutory damages pursuant to 17 U.S.C. § 504(c) instead of Defendants' profits or Plaintiff's damages; (iv) future royalties in the Infringing Series; (v) Plaintiff's reasonable attorneys' fees and all costs pursuant to 17 U.S.C. § 505; (vi) awarding Plaintiff interest, including pre-judgment and post-judgment interest, on the foregoing sums; and (vii) awarding such other and further relief as the court deems just and proper.

    g.    Or, in the alternative, finding that Defendants have misappropriated Lee's idea, an award for damages, and reasonable attorneys' fees under New York Law.

2)    On the Second Cause of Action, an award actual damages, or a sum to be determined at trial, an award for reasonable attorneys' fees; and

3)    Such other and further relief as the Court may deem just and reasonable.

## DEMAND FOR JURY TRIAL

Plaintiff, LATOSHA LEE, hereby demands a trial by jury of all issues so triable pursuant Fed. R. Civ. P. 38.

**DATED** on November 8, 2019

        Respectfully submitted,
        WATSON LLP

        */s/ Coleman Watson*
        _____

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
- 18 -

**Coleman W. Watson, Esq.**
New York Bar No. 4850004
California Bar No. 266015
Florida Bar. No. 0087288
Georgia Bar No. 317133
coleman@watsonllp.com
docketing@watsonllp.com

**Leia V. Leitner, Esq.**
Florida Bar No. 0105621
Email: leia@watsonllp.com
**Matthew E. Moats, Esq.**
Florida Bar No. 0112655
Email: matthew@watsonllp.com

**WATSON LLP**
Freedom Tower
One World Trade Center
Suite 8500
New York, NY 10007
Telephone: 212.206.1900
Facsimile: 212.220.8558

*Attorneys for Plaintiff,*
*Latosha Lee*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 8, 2019, pursuant to Fed. R. Civ. P. 5, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send an electronic notice to the following counsel of record in this proceeding:

Nicole J. Coward, Esq.
148 S. Long Beach Avenue
Freeport, NY 11520-4356
Tel.: (407) 377-6634
nicole@nicolecowardlaw.com
*Attorneys for Defendant, Nicci Gilbert*

Elizabeth A. McNamara
Jeremy A. Chase
Meredith I. Santana
1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
Telephone: (212) 489-8230
Email: lizmcnamara@dwt.com
       jeremychase@dwt.com
       meredithsantana@dwt.com
*Attorneys for Defendant Black Entertainment Television LLC*

Stewart L. Levy
707 Westchester Avenue, Suite 300
White Plains, New York 10604
Telephone: (212) 599-0777
Email: slevy@etllaw.com
*Attorneys for Defendant Flavor Unit Entertainment, Inc.*

                                  */s/ Coleman Watson*
                                  **Coleman W. Watson, Esq.**